IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY MARVELL SEMIEN,

    Plaintiff,                           No. CIV S-07-0750 LKK EFB P

    vs.

CAIN, et al.,

    Defendants.              <u>ORDER</u>

                              /

Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. On April 10, 2008, the Clerk of the Court entered the default of defendants Cain, Chand and Wenneker. Currently pending before the court is the defendants' September 4, 2008, motion to set aside the Clerk's entry of their default. For the reasons explained below, their motion must be granted.

**I.    Facts**

This action proceeds on the April 19, 2007, complaint in which plaintiff claims that defendants Cain, Chand and Wenneker used excessive force against him while he was confined in the Monroe Detention Center. He alleges that the defendants responded to a disturbance involving flooding in plaintiff's housing unit. He disobeyed a guard's order to get onto his bunk, and after the disturbance was brought under control, defendants removed plaintiff from his cell

1

and placed him in a restraining chair. In the process of restraining plaintiff, Cain twisted plaintiff's arm while placing him in the chair. Accordingly to plaintiff, after he was strapped into the chair, Wenneker grabbed him by his hair and forced him to look up at him, whereupon Chand discharged a taser gun at plaintiff's right shoulder.

On July 16, 2007, waivers of service of process signed by these defendants were filed. However, defendants did not respond to the complaint in the time prescribed by the Federal Rules of Civil Procedure. Thus, on February 4, 2008, plaintiff requested that the default of these defendants be entered. On April 10, 2008, the Clerk of the Court entered their default. *See* Fed. R. Civ. P. 55.

The defendants have submitted declarations explaining why they did not file answers. They note that as individual defendants sued based on events that occurred in connection with their employment with Yolo County, *see* Wenneker Dec., ¶ 6; Chand Dec., ¶ 4; Cain Dec., at ¶ 4, they do not obtain counsel for themselves. Instead, the Yolo County Counsel notifies the county's insurer of the action, and the insurer arranges for outside counsel to represent the County's employees. Tonks Dec., ¶ 3-5. It is not clear exactly what happened, but the insurer did not learn of this action until an attorney from the law firm currently representing the defendants called him to notify him of the entry of default. *Id*., ¶ 7. Wenneker asserts that since this is the first lawsuit filed against him based upon his employment with Yolo County, he followed the directions of others in attempting to obtain representation. Wenneker Dec., ¶ 6. Thus, when he received the request for waiver of service, he contacted a lieutenant and learned that the County would provide counsel for him. *Id.*, ¶ 3. The lieutenant told Wenneker to sign the waiver and wait until an attorney contacted him. *Id.* He asserts that he was told that the complaint and a copy of the signed waiver had been sent to the Yolo County Counsel. *Id.*, ¶ 4. However, Wenneker spoke with an attorney from the firm now representing the defendants on August 13, 2008, and learned that default had been entered against him. *Id.*, ¶ 5.

////

Defendants Chand and Cain provide a similar explanation. However, when they received the request for waiver of service, they were familiar with the procedure for obtaining counsel through their employer, Yolo County. Chand Dec., ¶ 4; Cain Dec., at ¶ 4. Thus, they signed the waivers, and provided the waivers and copies of the complaint to the lieutenant with the understanding that the documents would then be delivered to a captain. Chand Dec., ¶ 4; Cain Dec., ¶ 4. Chand and Cain waited to be contacted by an attorney. Chand Dec., ¶ 4; Cain Dec., ¶ 4. As was the case with Wenneker, on August 13, 2008, Chand spoke with an attorney from the firm now representing the defendants and learned of the default. Chand Dec., ¶ 5. Chand told Cain of the default in late August 2008. Cain Dec., ¶ 5.

As noted above, the defendants submit a proposed answer with their motion to set aside the default. In the proposed answer and in their declarations, they assert facts that they believe they could prove and which would result in judgment in their favor.

## II. Standards

"The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Under Ninth Circuit precedent, this court considers three factors in determining whether good cause is established: (1) whether setting aside the entry of default will prejudice the plaintiff; (2) whether the defendants engaged in culpable conduct leading to the default; and, (3) whether the defendants have a meritorious defense. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). A finding that any single factor is true suffices to deny a motion to set aside the entry of default. *Franchise Holding II, LLC v. Huntington rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).

## III. Analysis

### A. Culpable Conduct

Where a defendant has received actual or constructive notice that suit has been filed and has intentionally failed to answer, a court will find that there has been culpable conduct leading to the default. *TCI Group*, 244 F.3d at 697. In this context, "intentional" means that the

3

defendant acted wilfully, deliberately or in bad faith. *Id.* Where a defendant negligently failed to answer, but then offers a "good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process," a court will find that the defendant has not acted intentionally. *Id.* Culpable conduct involves "not simply nonappearance following receipt of notice of the action, but rather conduct which hindered judicial proceedings." *Id.*, at 698.

Here, all three defendants admit that they knew of this action and they each signed the request for waiver of service. However, they are sued in relation to their employment with Yolo County. As they explain in their declarations, there was an established procedure for obtaining counsel to represent them and they followed that procedure. Under that procedure the defendants themselves were not to contact or obtain counsel to respond to the compliant. Rather, they were to rely on their superiors in the chain of command to do this. Plaintiff points out that these superior officers have not submitted declarations explaining what happened once the defendants gave them the complaints and waivers. Pl.'s Opp'n, at 8. While plaintiff suggests that the superiors may have been culpable, the focus of the inquiry under Rule 55(c) is on the conduct and intent of the defendants and these superior officers are not parties to this action. Thus, it suffices that the defendants have explained their responsibilities and their conduct.

Plaintiff also points out that not one defendant has asserted that he inquired of his superiors about the status of this action. Pl.'s Opp'n, at 6. Plaintiff seems to argue that a reasonable jail official facing a lawsuit, even if his or her first, would have inquired about the case. While the point is valid, the defendants' failure to inquire at most amounts to negligence. The defendants have satisfied the requirement that they offer a good faith explanation for the default. Furthermore, there is no evidence that they intended to take advantage of plaintiff or to interfere with or manipulate the court or the judicial system. Accordingly, the court finds that the defendants did not engage in culpable conduct that led to the default.

////

### B. Meritorious Defense

This factor requires the defendant to present specific facts constituting a defense. *TCI Group*, 244 F.3d at 700. The moving party must "demonstrate facts or law showing the trial court that a sufficient defense is assertable." *Id.* at 699. Here, the defendants satisfy this requirement. In their proposed answer, the defendants assert the affirmative defense that the plaintiff failed to exhaust the available administrative remedies. Prop. Ans., at 4. *See* 42 U.S.C. § 1997(e); *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007). They also assert facts in support of a defense on the merits of plaintiff's claims. The court notes that both the complaint and the proposed answer are ambiguous as to a crucial fact, i.e., whether plaintiff was a pretrial detainee or whether he had been convicted of a crime at the time of the events giving rise to this action. If the plaintiff had been convicted of a crime, then the Eighth Amendment prohibition on cruel and unusual punishments governs. *See*, *e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). If, however, he was a pretrial detainee, then the Due Process Clause of the Fourteenth Amendment governs. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991). The standards for determining whether a use of force was excessive differ somewhat for a pretrial detainee and for a prisoner. *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990).

Furthermore, under either standard a crucial determination to be made is whether the defendants applied force in a good-faith effort to maintain or restore order. *Hudson*, 503 U.S. at 6-7; *White*, 901 F.2d at 1507. In their proposed answer, the defendants assert that they acted in good faith under the circumstances. Prop. Ans., at 2. In support of this assertion, they admit that they responded to plaintiff's housing unit, removed him from his cell on the ground that plaintiff refused an order to get onto his bunk, and placed him into a restraining chair. Prop. Ans., at 2. They also admit that Wenneker held plaintiff's head and that Chand "contact tased" plaintiff's shoulder while plaintiff was restrained in the chair. *Id.* However, whether the level of force used is reasonable under the circumstances is not determined in a vacuum. They note that

5

1 plaintiff omitted from his complaint details about his own behavior, which they describe as
2 "violent and unruly," and which included kicking a door so hard he broke the door jam, spitting
3 at and attempting to bite jail staff. Motion, at 6; Cain Dec., at ¶ 8; Wenneker Dec., at ¶¶ 16-17.
4 While it remains to be seen who will prevail as to the merits, this is sufficient to find that
5 defendants have a meritorious defense to present.

### C. Prejudice to Plaintiff

7 A plaintiff is prejudiced by setting aside default if it impedes the plaintiff's ability to
8 pursue his claim. *TCI Group*, 244 F.3d at 701. The mere fact of having to litigate an action on
9 its merits does not constitute prejudice. *Id.* Here, plaintiff argues that he has lost contact with a
10 witness and it will be difficult for him to locate this witness now. Pl.'s Opp'n, at 8-9. The most
11 glaring omission in plaintiff's argument on this factor is that he does not allege what this witness
12 would have said. Neither does he allege that this person was the only witness to the events
13 giving rise to this action. Furthermore, plaintiff was not required to wait until the defendants
14 answered and discovery began in order to investigate his case. He could have attempted to
15 obtain an affidavit from this witness or to obtain information that would have enabled plaintiff to
16 find him as this action progressed. Any prejudice resulting from plaintiff's failure to investigate
17 does not justify setting aside the default.

18 Plaintiff also argues that so much time has passed that, pursuant to jail policy, the tape
19 which memorialized the events giving rise to this suit may have been destroyed. Pl.'s Opp'n, at
20 9. Again, the possible loss of this evidence and any prejudice flowing therefrom results from
21 plaintiff's failure to begin gathering evidence and not from the defendants' delay. Plaintiff
22 seems to know the jail policy about the destruction of tapes. This policy operates independently
23 of the time consumed litigating an action. Plaintiff makes no showing that he requested copies
24 of the tape, which he could have done independently of whether time for discovery had begun.
25 Thus, he cannot show any connection between the defendants' default and the prejudice he may
26 suffer in litigating this action. He simply has failed to demonstrate that defendants' default have

6

prejudiced his ability to litigate this action.  This factor does not justify denying the defendants' motion.

**IV.     Conclusion**

Defendants have shown good cause for setting aside the entry of default.  Therefore, their motion must be granted.

Accordingly, it is ORDERED that:

1.  Defendants' September 4, 2008, motion to set aside the entry of default is granted;

2.  The Clerk of the Court shall set aside the default entered April 10, 2008; and,

3.  The Clerk of the Court shall file the defendants' September 4, 2008, proposed answer (Docket # 29).

Dated:  October 9, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE